# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| GERALD FELLOWS, | ) | 1:08-CV-01556 OWW JMD HC |
| | ) | |
| Petitioner, | ) | FINDINGS AND RECOMMENDATIONS |
| | ) | REGARDING PETITION FOR WRIT OF |
| v. | ) | HABEAS CORPUS |
| | ) | |
| J.D. HARTLEY, | ) | |
| | ) | |
| Respondent. | ) | OBJECTIONS DUE WITHIN THIRTY (30) |
| | ) | DAYS |

Gerald Fellows (hereinafter "Petitioner") is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL HISTORY**

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation pursuant to a 1982 conviction for second degree murder with a firearm enhancement. The trial court sentenced Petitioner to a term of fifteen years to life in prison. (Pet. at 2; Answer at 1.)

Petitioner is not challenging his conviction in this instant action; rather, Petitioner challenges the denial of his parole by the California Board of Parole Hearings (the "Board"), whom he appeared before in 2006. Petitioner contends that the Board violated his constitutional rights when they denied him parole. (Pet. at 3-6.)

On June 19, 2007, Petitioner filed a petition for writ of habeas corpus with the San Bernardino County Superior Court challenging the Board's denial of parole. (*See* Resp't Answer Ex. 1.) The Superior Court issued a reasoned opinion denying the petition on September 7, 2007. (*See* Resp't Ex. 5.)

Petitioner also filed petitions for writ of habeas corpus with the California Court of Appeal and the California Supreme Court. (Resp't Answer Exs. 6, 8.) The California Court of Appeal issued a summary denial of the petition on November 5, 2007. (Resp't Answer Ex. 7.) The California Supreme Court summarily denied the petition on June 18, 2008. (Resp't Answer Ex. 9.)

On October 16, 2008, Petitioner filed the instant federal petition for writ of habeas corpus.[1]

Respondent filed a response to the petition on February 27, 2009 and Petitioner filed a traverse on March 30, 2009.

## FACTUAL BACKGROUND

Petitioner pled guilty in July 1985 to second degree murder. (Pet. at 2). As stated at the parole hearing, the convictions pertained to a physical altercation between Petitioner and the victim arising out of a monetary debt the victim owed Petitioner. (Pet. Ex. A, Tr. Parole Hearing, at 8-12.) The victim had been hired by Petitioner to do some work for apartments Petitioner was managing but had failed to complete the work. Petitioner and the victim engaged in a verbal argument during a car ride that escalated into a physical altercation once the car stopped. During this altercation, Petitioner claims the victim hit him. Petitioner responded by knifing the victim. (Id.) Petitioner then enlisted the help of his common law wife's fourteen year old son to put the victim into the trunk. It is unclear if the victim was alive at that point. Petitioner was forty-two years old at the time of the commitment offense and had an extensive criminal history that began when he was sixteen years of age.

## DISCUSSION

**I.    Jurisdiction**

A person in custody pursuant to the judgment of a State court may petition a district court for relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); *Williams v. Taylor*, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution at Avenal State Prison, which is located in Kings County. As Kings

---

[1] Respondent admits that the petition was timely filed and that Petitioner has exhausted his state court remedies. (Answer at 2.)

1  County falls within this judicial district, 28 U.S.C. § 84(b), the Court has jurisdiction over
2  Petitioner's application for writ of habeas corpus. *See* 28 U.S.C. § 2241(d) (vesting concurrent
3  jurisdiction over application for writ of habeas corpus to the district court where the petitioner is
4  currently in custody or the district court in which a State court convicted and sentenced Petitioner if
5  the State "contains two or more Federal judicial districts").

6  **II.    AEDPA Standard of Review**

7        On April 24, 1996, Congress enacted the Anti-terrorism and Effective Death Penalty Act of
8  1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's
9  enactment. *Lindh v. Murphy*, 521 U.S. 320, 326-327 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499
10 (9th Cir. 1997). The instant petition was filed after the enactment of the AEDPA and is consequently
11 governed by its provisions. *See Lockyer v. Andrade*, 538 U.S. 63, 70 (2003). Thus, the instant
12 petition "may be granted only if [Petitioner] demonstrates that the state court decision denying relief
13 was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as
14 determined by the Supreme Court of the United States.'" *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir.
15 2007) (quoting 28 U.S.C. § 2254(d)(1))*, overruled in part on other grounds*, *Hayward v. Marshall*,
16 603 F.3d 546, 555 (9th Cir. 2010) (en banc); *see Lockyer*, 538 U.S. at 70-71.

17       Title 28 of the United States Code, section 2254 remains the exclusive vehicle for
18 Petitioner's habeas petition as Petitioner is in the custody of the California Department of
19 Corrections and Rehabilitation pursuant to a state court judgment. *See Sass v. California Board of*
20 *Prison Terms*, 461 F.3d 1123, 1126-1127 (9th Cir. 2006) *overruled in part on other grounds*,
21 *Hayward*, 603 F.3d at 555. As a threshold matter, this Court must "first decide what constitutes
22 'clearly established Federal law, as determined by the Supreme Court of the United States.'"
23 *Lockyer*, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what is "clearly
24 established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the
25 Supreme Court's] decisions as of the time of the relevant state-court decision." *Id*. (quoting
26 *Williams*, 592 U.S. at 412). "In other words, 'clearly established Federal law' under § 2254(d)(1) is
27 the governing legal principle or principles set forth by the Supreme Court at the time the state court
28 renders its decision." *Id*. Finally, this Court must consider whether the state court's decision was

1  "contrary to, or involved an unreasonable application of, clearly established Federal law." *Lockyer*,
2  538 U.S. at 72, (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas
3  court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the
4  Supreme] Court on a question of law or if the state court decides a case differently than [the] Court
5  has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413; *see also Lockyer*, 538
6  U.S. at 72. "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if
7  the state court identifies the correct governing legal principle from [the] Court's decisions but
8  unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413.
9  "[A] federal court may not issue the writ simply because the court concludes in its independent
10 judgment that the relevant state court decision applied clearly established federal law erroneously or
11 incorrectly. Rather, that application must also be unreasonable." *Id*. at 411.  A federal habeas court
12 making the "unreasonable application" inquiry should ask whether the State court's application of
13 clearly established federal law was "objectively unreasonable." *Id*. at 409.

14        Petitioner bears the burden of establishing that the state court's decision is contrary to or
15 involved an unreasonable application of United States Supreme Court precedent.  *Baylor v. Estelle*,
16 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth
17 Circuit precedent remains relevant persuasive authority in determining whether a state court decision
18 is objectively unreasonable.  *Clark v. Murphy*, 331 F.3d 1062, 1072 (9th Cir. 2003) ("While *only* the
19 Supreme Court's precedents are binding on the Arizona court, and only those precedents need be
20 reasonably applied, we may look for guidance to circuit precedents"); *Duhaime v. Ducharme*, 200
21 F.3d 597, 600-01 (9th Cir. 1999) ("because of the 1996 AEDPA amendments, it can no longer
22 reverse a state court decision merely because that decision conflicts with Ninth Circuit precedent on
23 a federal Constitutional issue . . . This does not mean that Ninth Circuit caselaw is never relevant to a
24 habeas case after AEDPA. Our cases may be persuasive authority for purposes of determining
25 whether a particular state court decision is an 'unreasonable application' of Supreme Court law, and
26 also may help us determine what law is 'clearly established'").  Furthermore, the AEDPA requires
27 that the Court give considerable deference to state court decisions.  The state court's factual findings
28 are presumed correct. 28 U.S.C. § 2254(e)(1).  A federal habeas court is bound by a state's

interpretation of its own laws. *Souch v. Schaivo*, 289 F.3d 616, 621 (9th Cir. 2002).

The initial step in applying AEDPA's standards is to "identify the state court decision that is appropriate for our review." *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005). Where more than one State court has adjudicated Petitioner's claims, a federal habeas court analyzes the last reasoned decision. *Id*. (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) for the presumption that later unexplained orders, upholding a judgment or rejecting the same claim, rests upon the same ground as the prior order). Thus, a federal habeas court looks through ambiguous or unexplained state court decisions to the last reasoned decision to determine whether that decision was contrary to or an unreasonable application of clearly established federal law. *Bailey v. Rae*, 339 F.3d 1107, 1112-1113 (9th Cir. 2003). Here, the San Bernardino County Superior Court, the California Court of Appeal, and the California Supreme Court reached the merits of Petitioner's claims. As both the California Court of Appeal and the California Supreme Court summarily denied Petitioner's claims, the Court looks through those decisions to the last reasoned decision; namely, that of the San Bernardino County Superior Court. *See Nunnemaker*, 501 U.S. at 804.

### III.    Review of Petitioner's Claims

The petition for writ of habeas corpus contains four grounds for relief, all alleging that the Board's denial of parole implicated Petitioner's right to due process of the law. In his first ground for relief, Petitioner contends that the Board's continuing reliance on his crime violates his due process rights. Petitioner's second ground for relief alleges that his due process rights were violated as there was no evidence to support the Board's denial. Petitioner claims in his third ground for relief that California Penal Code section 3041 creates a liberty interest in parole. Lastly, Petitioner contends that the Board failed to base its decision on the suitability criteria codified in California's regulations. As Petitioner's claims center around the denial of parole and its implications for Petitioner's due process rights, the Court analyzes these grounds for relief together.

The Court analyzes Petitioner's due process claims in two steps: "the first asks whether there exist a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'" *Sass*, 461 F.3d at 1127. The United States Constitution does not, by itself, create a protected liberty interest in

a parole date. *Jago v. Van Curen*, 454 U.S. 14, 17-21 (1981). Respondent argues that Petitioner does not have a federally protected liberty interest in parole. (Resp't Answer at 4.) The Ninth Circuit Court of Appeals has recognized that "[i]f there is any right to be release on parole, or to release in the absence of some evidence of future dangerousness, it has to arise from substantive state law creating a right to release." *Hayward*, 603 F.3d at 555. The Ninth Circuit further recognized that "[t]here is no general federal constitutional 'some evidence' requirement for denial of parole, in the absence of state law creating an enforceable right to parole." *Id*. at 559. The *Hayward* court's finding, that there exists no free standing federal due process right to parole or the federal right to some evidence of current dangerousness, contained the consistent and continual caveat that state law may in fact give rise to federal protection for those rights. As the Ninth Circuit later reiterated, "state created rights may give rise to liberty interests that may be enforced as a matter of federal law." *Pearson v. Muntz*, 606 F.3d 606, 609 (9th Cir. 2010) (per curiam) (citing *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)). The *Pearson* court found that, "*Hayward* necessarily held that compliance with state requirement is mandated by federal law, specifically the Due Process Clause" as "[t]he principle that state law gives rise to liberty interests that may be enforced as a matter of federal law is long-established." *Id.*

The next question is whether California's parole scheme gives rise to a liberty interest enforced as a matter of federal law. The Ninth Circuit has definitively concluded that "California has created a parole system that independently requires the enforcement of certain procedural and substantive rights, including the right to parole absent 'some evidence' of current dangerousness." *Id*. at 611 (citing *Hayward*, 603 F.3d at 562); *see also Cooke v. Solis*, 606 F.3d 1206, 1213 (9th Cir. 2010) (noting that "California's 'some evidence' requirement is a component of the liberty interest created by the parole system of that state"). The Ninth Circuit reiterated this finding, stating that "'California's parole scheme give rise to a cognizable liberty interest in release on parole. [citation] That liberty interest encompasses the state-created requirement that a parole decision must be supported by 'some evidence' of current dangerousness." *Pirtle v. California Bd. Of Prison Terms*, __ F.3d __, 2010 WL 2732888 (9th Cir. 2010) (citation omitted). Consequently, the dispositive inquiry that this Court must undertake, in determining whether the denial of parole comports with the

1 requirement of federal due process, is "whether the California judicial decision approving the
2 governor's [or parole board's] decision rejecting parole was an 'unreasonable application' of the
3 California 'some evidence' requirement, or was 'based on an unreasonable determination of the facts
4 in light of the evidence.'" *Hayward*, 603 F.3d at 563 (quoting 28 U.S.C. § 2254(d)(1)-(2)) (footnotes
5 omitted).

### A.   State Court Decision

The last reasoned decision by a State court was that of the San Bernardino County Superior Court. The Superior Court upheld the Board's denial, finding that there was a modicum of evidence to support the Board's finding that Petitioner was unsuitable for parole. (Resp't Answer Ex. 5 at 3.) The Superior Court noted that the Board had relied solely on Petitioner's lengthy criminal history and the circumstances of the commitment offense, especially Petitioner's enlistment of a fourteen year old boy to dispose of the body, in finding Petitioner's unsuitable. (Id. at 4.)

The Court finds the analysis undertaken by the San Bernardino Superior Court to be an unreasonable application of the California some evidence standard as articulated by the California Supreme Court and the Ninth Circuit Court of Appeals. As the Ninth Circuit recently observed in *Cooke*:

> Under California law, "the paramount consideration for both the Board and the Governor" must be "whether the inmate currently poses a threat to public safety and thus may not be released on parole,"[citation], and "the facts relied upon by the Board or the Governor [must] support the ultimate decision that the inmate remains a threat to public safety.

*Cooke*, 606 F.3d at 1214 (quoting *In re Lawrence*, 44 Cal. 4th 1181, 1210, 1213 (2008)); *see also* Cal. Code Regs., tit. 15, § 2402(a) ("[I]f in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison," the prisoner must be found unsuitable and denied parole). The California Supreme Court held in *Lawrence* that, "[t]he relevant determination for the Board and the Governor is, and always has been, an individualized assessment of the continuing danger and risk to public safety posed by the inmate." *In re Lawrence*, 44 Cal. 4th at 1227 (noting that "mere recitation of the circumstances of the commitment offense, absent articulation of a rational nexus between those facts and current dangerousness, fails to provide the required "modicum of evidence" of unsuitability"). In setting forth the standard for federal habeas

courts, the Ninth Circuit emphasized this principle, stating that "a reviewing court must consider 'whether the identified facts are *probative* to the central issue of *current* dangerousness when considered in light of the full record before the Board or the Governor.'" *Cooke*, 606 F.3d at 1214 (emphasis in original) (quoting *In re Lawrence*, 44 Cal. 4th at 1221).

Here, the San Bernardino Superior Court's decision only briefly mentions Petitioner's current dangerousness. The Superior Court's decision is entirely devoid of any discussion or examination pertaining to whether there is evidence to support a finding that Petitioner is currently dangerous. As the California Supreme Court mandates "that current dangerousness (rather than the mere presence of a statutory unsuitability factor) is the focus of the parole decision," the State court's decision to be an objectively unreasonable application of the California some evidence standard. *In re Lawrence*, 44 Cal. 4th at 1210.

### B. Parole Board's Decision

The finding that the State court's decision was objectively unreasonable does not end a federal habeas court's inquiry. *See Butler v. Curry*, 528 F.3d 624, 641 (9th Cir. 2008) (citing 28 U.S.C. § 2241(c)(3) in noting that a federal habeas court's finding that state court's decision is contrary to established federal law does not end that court's inquiry). A federal habeas court's "power to grant the writ of habeas corpus to a state inmate depends on his actually being 'in custody in violation of the Constitution or laws ... of the United States.'" *Id*. Thus, Petitioner is only entitled to habeas corpus relief if his due process rights were violated by a lack of evidence supporting the Board's denial of parole.

As discussed in the Superior Court's decision, the Board relied only on two factors to deny Petitioner parole–namely, Petitioner's commitment offense and his pre-incarceration criminal history. (Pet. Ex. A at 61-62.) The Board may not rely on the circumstances of the commitment offense as :

> the aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

*In re Lawrence*, 44 Cal.4th at 1214; *see also Pirtle*, __ F.3d __, 2010 WL 2732888, *5 (quoting *Hayward*, 606 F.3d at 562).

The *Lawrence* court further held that even where the commitment offense was particularly egregious, reliance on this immutable factor would violate a petitioner's due process rights under California's regulations and statutes governing parole suitability where:

> evidence of the inmate's rehabilitation and suitability for parole under the governing statutes and regulations is overwhelming, the only evidence related to unsuitability is the gravity of the commitment offense, and that offense is both temporally remote and mitigated by circumstances indicating the conduct is unlikely to recur, the immutable circumstance that the commitment offense involved aggravated conduct does not provide 'some evidence' *inevitably* supporting the ultimate decision that the inmate remains a threat to public safety.

*In re Lawrence*, 44 Cal.4th at 1191 (emphasis in original).

In *Lawrence*, the California Supreme Court found that a commitment offense occurring over thirty years prior to the Governor's denial of parole was no longer probative of the petitioner's current dangerousness. The *Lawrence* court found that the intervening twenty-four years in which petitioner, now age sixty-one, had rendered "the unchanging factor of the gravity of petitioner's commitment offense" no longer probative of current dangerousness and therefore could not constitute some evidence. *Id.* at 1226.

Here, the Court finds that the intervening twenty-four years between the circumstances of the commitment offense and the parole hearing has evidenced Petitioner's extensive rehabilitative efforts. As noted by the Board, Petitioner has "programmed commendably" in the intervening twenty-four years. (Tr. Parole Hearing at 62). Petitioner has obtained his high school diploma and completed three different vocations. (Id. at 62-63.) Petitioner volunteers as a tutor, which the Board took as a sign of Petitioner reaching out to others and "taking part in other's lives . . . obviously thinking about other people." (Id. at 63.) The Board noted that Petitioner had continuously without interruption participated in Narcotics and Alcoholics Anonymous and completed in an abundance of self-help programs, including anger management. (Id. at 22-24, 63) The Board further noted that

1  Petitioner had a "basically violence free behavior in this institution."[2]  (Tr. Parole Hearing at 62-63.)
2  Petitioner's psychological evaluation was supportive of parole as the evaluator labeled him a low
3  risk of future violence under the heading of clinical presentation. (Id. at 32.)  The evaluator noted
4  Petitioner presented as a low to moderately low risk of future violence under the heading of
5  management of future risks. (Id.)  In sum, the Court finds that the circumstances of the commitment
6  offense are not probative towards Petitioner's current dangerousness in light of Petitioner's extensive
7  rehabilitative efforts and the temporal remoteness of the crime.  As the Ninth Circuit stated, the
8  circumstances of the commitment offense "cannot, standing alone, constitute the requisite evidence
9  of current dangerousness," as "there must be more than the crime or its circumstances alone to justify
10 the Board's or the Governor's finding of current dangerousness." *Cooke*, 606 F.3d at 1214, 1216.

11      The only other factor the Board relied on was Petitioner's prior criminal misconduct, which is
12 even more attenuated in terms of length of time than the commitment offense.   The same reasons
13 that rendered the commitment offense no longer probative are applicable to Petitioner's pre-
14 incarceration criminal misconduct.  While Petitioner's criminal history was extensive and included
15 two jail terms, at least one of which involved violence, "all of the information in a postconviction
16 record supports the determination that the inmate is rehabilitated and no longer poses a danger to
17 public safety." *In re Lawrence*, 44 Cal. 4th at 1226-1227.  More importantly, the Board has failed to
18 articulate "a rational nexus between those facts and current dangerousness" and thus "fails to provide
19 the required "modicum of evidence" of unsuitability." *Id*.  Thus, viewed in light of the full record,
20 the Court finds that the Board's decision was not supported by some evidence of current
21 dangerousness. *See In re Lawrence*, 44 Cal.4th at 1221.
22 \\\
23 \\\
24 \\\

---

[2] The Board noted that Petitioner received a serious disciplinary violation five years previously, in 2000, for mutual combat. However, as stated by the Board, "You've explained that to this panel today, where basically you got hit over the head with a punch, and that was again the only disciplinary violation." (Tr. Parole Hearing at 64, 37-38.) The Court does not find that the Board relied on this factor. This reading of the record is supported by the Superior Court's failure to list Petitioner's disciplinary infraction as a factor relied upon by the Board.

*C.     Appropriate Remedy*

In the answer, Respondent contends that the appropriate remedy for a violation of Petitioner's due process right is a new review by the Board, citing to *Benny v. United States Parole Commission*, 295 F.3d 977, 984-85 (9th Cir. 2002) in support of this contention. (Resp't Answer at 4.)  The Ninth Circuit has expressly rejected this argument, stating that, "[f]ederal courts have the latitude to resolve a habeas corpus petition as law and justice require.' [Citation]  Ordering the release of a prisoner is well within the range of remedies available to federal habeas courts." *Pirtle*, __ F.3d __, 2010 WL 2732888, *8 (quoting 28 U.S.C. § 2243)*; see also Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005) (stating that federal courts "have a fair amount of flexibility in fashioning specific habeas relief"); *Sanders v. Ratelle*, 21 F.3d 1446, 1461 (9th Cir. 1994) (noting that federal habeas court is vested with the largest power to control and direct the form of judgment to be entered); *Milot v. Haws*, 628 F. Supp. 2d 1152, 1156 (C.D. Cal. 2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987)("[F]ederal habeas courts have 'broad discretion in conditioning a judgment granting habeas relief' and in 'dispos[ing] of habeas corpus matters 'as law and justice require'").  Furthermore, as noted by the California Court of Appeal where "the prisoner was not lawfully in custody during the nine years following his original parole date because the rescission of that date was not supported by 'some evidence.' [citation] *The prisoner was therefore entitled to a credit of this unlawful custody time against his three-year parole period*." *In re Bush*, 161 Cal. App. 4th 133, 144-45 (2008) (emphasis added).  Thus, the Court recommends that Petitioner be credited for the time he has unlawfully served; namely, the time he has served as a result of the violation of his constitutional rights.

**RECOMMENDATION**

Accordingly, in accordance with the above, IT IS HEREBY RECOMMEND that:

1.     The petition for writ of habeas corpus be GRANTED;
2.     The Clerk of Court be directed to enter judgement for Petitioner;
3.     Judgment be entered granting a writ of habeas corpus as follows: The Board shall find Petitioner suitable for parole at a hearing to be held within 30 days of the order adopting this decision, unless new evidence of his conduct in prison or change in

mental status subsequent to the 2006 parole hearing is introduced and is sufficient to support a finding that Petitioner currently poses an unreasonable risk of danger to society if released on parole.  In the absence of any such new evidence showing Petitioner's current dangerousness, the Board shall calculate a prison term and release date for Petitioner in accordance with California law.  Further, if the release date already has passed, Respondent shall, within ten (10) days of the Board's hearing, release Petitioner from custody.  With respect to his presumptive period of parole, Petitioner is to be credited for any time that has lapsed since the release date calculated by the Board or when a finding of suitability at the November 2006 parole consideration hearing would have become final pursuant to California Penal Code sections 3041(b) and 3041.2(a)), whichever is later.

This Findings and Recommendation is submitted to the Honorable Oliver W. Wanger, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within ten (10) *court* days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   July 22, 2010**                   **/s/ John M. Dixon**
                                             UNITED STATES MAGISTRATE JUDGE